IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02207-CMA-MJW

SHAWN D.  ALLEN,

Plaintiff,

v.

N.  ALLEN,
C.  FLORY,
A.  COSNER,
K.  NORDELL,
A.  MEDINA,
K.  SOKOL, and
C.  TUTTLE,

Defendants.

---

## RECOMMENDATION ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 96)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This matter was referred to this court pursuant to an Order Referring Case issued

on September 20, 2012, by Judge Christine M. Arguello.  (Docket No. 7).

## PLAINTIFF'S ALLEGATIONS

The operative pleading is the rambling, prolix original Prisoner Complaint (Docket

No. 3) filed by the pro se plaintiff, Shawn D. Allen, when he was incarcerated.  Most of

the allegations concern incidents that allegedly occurred at the Limon Correctional

Facility ("LCF").  Plaintiff has just recently been released.  Plaintiff asserts the following

five claims in that pleading, which is brought pursuant to 42 U.S.C. § 1983.

2

**Claim One.**  In 2009, defendant Allen, the Unit Lieutenant, violated plaintiff's First Amendment rights due to retaliation and discrimination and the Fourteenth Amendment right to equal protection.

On July 8, 2009, plaintiff spoke and wrote to Allen about plaintiff's concern that he would be assaulted or killed by a cell mate if forced to have one and how if plaintiff was hired as a unit porter, he would be housed alone.  Later that day, Allen informed plaintiff that she would hire him as a porter.

Two days later, however, on Friday, July 10, Allen and plaintiff got into a brief argument over an unrelated issue.  She made "vague threats," and so plaintiff warned her that he would file a formal complaint on her and possibly sue.  That evening plaintiff wrote a Step 1 Grievance on Allen and handed it to staff to put in the case manager's mailbox.  There can be no doubt that Allen read it.  The following Monday morning, on July 13, in retaliation to plaintiff's verbal threat and written grievance, Allen instructed two subordinate officers to move plaintiff out of the unit to another and into a cell with another prisoner.  Plaintiff asked to speak with Allen, but Allen refused.  Plaintiff told staff he was to start work soon as a unit porter, but the control booth officer stated that plaintiff "messed that up" when he filed a grievance on Allen.

Plaintiff refused to move, and to avoid an altercation, told the unit officers to just take him to segregation ("Seg").  He told them, "If I am housed in a locked cell with another I might have a problem."  That request was forwarded by the officers to Allen, who directed them to cuff plaintiff and physically transport him to the other unit and into the cell with the other inmate.  This policy and practice of forced movement resulted in plaintiff being put in a perilous situation of which Allen was well aware.  Immediately

after being forced into the other cell, an "incident" occurred between a prisoner in the new unit and plaintiff which caused plaintiff to be put in Seg and charged with an unwarranted assault.  But for Allen's retaliatory posture and reckless disregard to plaintiff's well-established rights, plaintiff would never have endured this injury.

Plaintiff "deduced" that Allen subsequently gave Officer Sanger a "green light" to retaliate on her behalf.  On August 30, 2009, Sanger refused to open plaintiff's cell door so he could pick up the rationed roll of toilet paper, but everyone else got theirs.  Both Allen and Sanger work together on Sundays.  Sanger was one of the subordinates Allen directed to force move plaintiff on July 13.  That evening plaintiff filed a Step 1 Grievance on Sanger.  Sanger, however, is not named as a defendant.

On October 25, 2009, Allen threatened plaintiff that if he got a new tattoo, she would write him up.[1]  Plaintiff later learned that Allen had told a prisoner who was suspected of doing tattoos in the same unit that plaintiff had snitched on him, which was a lie.  That prisoner is a friend of the prisoner with whom plaintiff got into a fight after Allen forced plaintiff to move.  Allen was trying to stir up a problem, which is an equal protection violation.

The following day, since plaintiff was now uncomfortable living in a cell near the prisoner he supposedly snitched on, he asked the Unit sSrgeant if he could move to an empty corner cell that was in a different pod within the unit.  Allen overheard plaintiff mention his desire to move to another cell and obstructed the cell change.  But for plaintiff filing grievances and preparing this lawsuit against Allen, plaintiff would have

[1]Plaintiff testified at his deposition that he was not suing for the "tattoo incident." (Docket No. 96-1 at 16).

been permitted to move.  Allen subjected him to harsh living conditions only because of plaintiff's engagements in protected activities and without legitimate penological interest. She violated his right to equal protection.  Plaintiff was singled out and treated differently than others similarly situated.

On October 26, 2009, plaintiff filed another Step 1 Grievance on Allen's discrimination towards plaintiff based on plaintiff's grievance filings.  Plaintiff sent other complaints to other offices.  On November 2, 2009, plaintiff asked Allen for a pillow and was told to "go to hell," yet other prisoners had received new pillows.  On November 6, Allen gave plaintiff a pillow, and plaintiff later discovered a make-shift knife/scissor, which plaintiff threw away the next day.  Allen was once again trying to set plaintiff up. Plaintiff returned the pillow to her.[2]

On November 9, 2009, while in the law library, plaintiff had defendant Cosner copy letters to the Inspector General's Office.  Plaintiff conjectures that Cosner alerted other officials, Sokol, and Allen.  The following day, plaintiff mailed these letters, and on November 12, he was taken to Seg.  Allen violated administrative regulations concerning discrimination and retaliation.

**Claim Two.**  Defendant Officer Flory violated plaintiff's First Amendment rights to free speech and access to the courts, retaliated, and violated plaintiff's equal protection rights.

On July 13, 2009, when plaintiff entered Unit Six at LTE, plaintiff told Flory he just

---

[2]Plaintiff stated at his deposition that he is not suing Allen over the "knife situation" because he did not exhaust his administrative remedies.  He stated it was "just part of the narrative."  (Docket No. 96-1 at 15).

wanted to go to Seg because he was not going to be forced to live in a locked cell with another prisoner.  Plaintiff warned Flory that should he join in with the other officers and force plaintiff into the other prisoner's cell, he would sue him.  Flory, however, went ahead and participated in physically moving plaintiff into a cell housed by a convicted killer while plaintiff was handcuffed behind the back.  Consequently, Flory violated plaintiff's equal protection rights.

Five minutes after this forced move and the threat of suing Flory, an altercation occurred between inmate Chavez and plaintiff.  Although Chavez first shoved plaintiff, Flory wrote a misbehavior report falsely accusing plaintiff of a serious class one assault, which plaintiff did not do.  Had plaintiff not told Flory that he planned to take legal action on him, he would not have charged him with an assault for a "30 second scuffle." Prisoners are charged with an assault for causing significant injury or using some sort of weapon, and plaintiff did not cause any major injury and did not use a weapon. Plaintiff's actions in response to being shoved in his chest were justified, and such self defense made the disciplinary charge unwarranted.  Plaintiff has no history of assault or even a simple fight.

At the disciplinary hearing, Flory testified that he did not see plaintiff get pushed initially and was far away.  Plaintiff's request for Chavez to be a witness was denied. Chavez would have given exculpatory testimony.  Plaintiff was convicted of assault, and this "stigmatizing conviction" has trapped plaintiff in high security prisons even though he is not a violent prisoner and has no violent criminal convictions.  In addition, this bogus conviction threatens plaintiff's parole eligibility and halfway house considerations. Flory penalized plaintiff for having exercised a right.

6

Plaintiff does not seek expungement of this conviction.  He admits he got into the scuffle, albeit in self defense.  He is merely seeking monetary relief for Flory's unlawful act.

**Claim Three.**  Defendant Cosner violated the First, Fifth, and Fourteenth Amendments due to retaliation, harassment, violation of substantive due process, defamation, discrimination, conspiracy, equal protection violation, and denial of access to the courts.

In July 2009 defendant Cosner, a legal assistant at LTE, began depriving plaintiff of reasonable legal assistance because of her being lax and derelict in her duties and because of the many complaint letters plaintiff wrote to her supervisors, as well as his grievances and Notices of Claims.  While in Seg in July 2009, plaintiff submitted several request forms to Costner for his legal property and supplies, but Cosner ignored them from July 13 to 23.  Therefore, on July 23 plaintiff filed a Step 1 Grievance, had already written a complaint to defendant Sokol (Cosner's supervisor) and a complaint to plaintiff's case manager, and had filed a notice of intent to sue Cosner.  In the Grievance, plaintiff warned Cosner that he would sue her if he in fact suffered injury.  On July 24 Cosner showed up angry at plaintiff but provided the requested aid.  Plaintiff contends that but for the slew of complaints, Cosner never would have provided him aid.

Cosner was never in Seg assisting prisoners.  Waiting over a week in Seg for legal assistance is not reasonable and runs contrary to the DOC rules.  On one "kite" plaintiff put a July 17, 2009, court deadline, and Cosner lied about receiving the kite a week after it was submitted.  Her denial obstructed plaintiff's right to access to the

courts.  As a result, his cases before this court (cases 09-cv-00741 and 09-cv-01349) were both dismissed.  But for Cosner's deprivation, plaintiff would have been able to prepare his response and cases timely.

On Monday, August 3, 2009, while still in Seg, plaintiff submitted more legal kites and sent out a second complaint letter to Sokol on August 6.  Then on August 9, plaintiff filed a new Step 1 Grievance concerning legal access denials.  Cosner's actions were motivated by plaintiff's complaints and intent to sue.  First she caused two cases to be dismissed, and she was now retaliating.

Over the next two months access to the library was sporadic, and it was curtailed in October 2009.  On October 6, 2009, plaintiff mailed another Declaration to defendant LCF Warden Medina (Cosner's supervisor), complaining about the library being closed, yet Cosner was in her office playing on the computer and talking on the phone. Defendants Nordell, Medina, and Sokol "dispatched" plaintiff's complaints to Cosner. Plaintiff sent a third complaint to Sokol on November 9, 2009.  On November 10, 2009, plaintiff finally was able to visit the law library during which he had Cosner copy a Notice to the Court he had written about how Cosner's deprivations may obstruct and prejudice his case.  Cosner read that Notice, and that Notice along with the previous complaints motivated her "to viciously visit her unbridled wrath upon [plaintiff]."  (Docket No. 3 at 25).  She falsely accused plaintiff of looking at her improperly, which was defamation and violated plaintiff's right to equal protection.  Her claim resulted in plaintiff being wrongfully placed on a behavior management plan ("BMP") which put restraints on plaintiff's speech, classified him as a problem prisoner, caused him to be harassed by officials, and caused him to have extra pat down and cell searches.  Cosner has a

pattern of conduct targeting black prisoners.  Plaintiff was treated differently in part due to his being a black man, and Cosner singled plaintiff out because he exercised a right.

Once plaintiff was in Seg, Cosner again refused to provide legal supplies, case law, and legal property.  On November 15, 2009, plaintiff mailed a Declaration to defendant Nordell regarding Cosner's reprisal.  Cosner conspired with at least defendants Nordell, Medina, and Sokol to undermine plaintiff's complaints.  On November 17, 2009, plaintiff filed a Step 1 Grievance against her supervisors.  On November 19, 2009, plaintiff mailed another Declaration to Medina and Nordell accusing the Warden of a failure to supervise.

Cosner learned of these complaints.  Finally, after plaintiff spent eight days in Seg, she stopped by to collect papers to copy and later returned with his legal property. Shortly thereafter, plaintiff discovered his vital legal notebook with over fifty pages of legal writings, notes, case citations, etc., was removed from a manilla envelope. Plaintiff then filed a Grievance on Cosner for stealing the notebook, contacted the U.S. Department of Justice and the Inspector General asking for an investigation, and filed a motion to have the Lincoln County Court order the defendant to provide him reasonable access to the prison library.

Once out of Seg, getting to the library was difficult, and in September 2009 Cosner told plaintiff that if he needed copies and the library was closed, he could have unit staff call her.  Plaintiff did so twice in September.  However, when he had unit staff call her on November 30, 2009, Cosner once again conjured up an issue, accusing plaintiff of trying to manipulate staff.

On December 3, 2009, plaintiff mailed another report of denial of access to the

law library to defendant Nordell. On December 6, 2009, plaintiff filed a Step 1

Grievance regarding the library closures. On December 9, defendant Medina directed

plaintiff to attend a "staffing" with defendants Sokol and Cosner. These four defendants

conspired to contrive the BMP, ostensibly for plaintiff's benefit, when in fact it was

imposed upon him as a deterrent to his engaging in protected activities. Plaintiff again

wrote to the Attorney General's Office, and on December 27, 2009, he filed a Step 1

Grievance on the Inspector General for failing to investigate Cosner's taking plaintiff's

legal property. All the Inspector General did was send a copy of the plaintiff's

November 29, 2009, letter to defendant Nordell, who no doubt faxed Cosner a copy.

Nordell conspired with Cosner to cover up the crime. On December 30, 2009, plaintiff

filed another complaint with the U.S. Department of Justice.

On January 5, 2010, plaintiff mailed a letter to another inmate who was in Seg

because of a charge Cosner made against him. Plaintiff asked the inmate about what

occurred and requested a sworn affidavit, which plaintiff received, only to have it later

removed from his legal box. The mail room gave Cosner a copy of plaintiff's letter. As

a result of plaintiff's letter, and also because of the January 7, 2010, Step 1 Grievance

plaintiff filed against Nordell, Medina, Sokol, and Cosner for conspiracy and plaintiff's

complaint to the Attorney General (copies of which plaintiff mailed to Nordell and

Medina), plaintiff was taken to Seg on January 8, 2010.

Cosner conspired with the supervisory defendants to retaliate against plaintiff for

his various complaints and discriminated against plaintiff because he exercised his

rights. The second Seg placement and the BMP were harassment, which violated

plaintiff's right to equal protection and deprived him of substantive due process. Plaintiff

10

was not allowed a formal hearing on the BMP in order to defend himself against the classification.

Once back in Seg for exercising a right, Cosner refused to provide plaintiff any legal assistance, and supervisors did nothing to prevent it.  Every legal access request plaintiff submitted was denied.  Plaintiff was in Seg with no personal legal property, and Cosner refused to provide it.  Plaintiff was also denied necessary supplies to access the courts.  Consequently, at least one case, 09-cv-02605-CMA-MJW, was prejudiced, with a ruling in favor of the defendants.  Had Cosner provided requested "needs," plaintiff would have been able to submit his response to defendants' motion to dismiss and answer.

Plaintiff sat in Seg From January 8 to 25, 2010, with no property except a blanket and clothing, but all others in Seg had their envelopes, pens, etc.  Plaintiff filed another Step 1 Grievance, yet plaintiff never received any items from Cosner.  The kites attached to Cosner's response were simply back dated and "responded to" after the grievance was filed and after plaintiff was transferred to another facility.   Nordell condoned such deception.  Plaintiff did receive a 1983 packet, but the other materials he requested were denied.

On January 26, 2010, after eighteen days in Seg for exercising a right, plaintiff was transferred, and his property was kept at LCF.  He did not see his property until March 11, 2009, and his legal box "had been brutally raped."  LCF officials stole the several sworn affidavits he had acquired and was to use in this case.  Plaintiff had to ask the court for copies of two documents because they were also missing from his property.  Plaintiff filed another Step 1 Grievance for this deprivation, but he cannot tell

what staff was culpable.  Cosner conspired with defendants Nordell and Tuttle to deprive plaintiff of his legal documents.

Nearly a month after leaving LCF, plaintiff receive a Notice of Charges in which Cosner filed a bogus and tardy charge against him, and plaintiff was found not guilty during a disciplinary hearing on March 24, 2010.

**Claim Four.**  Plaintiff alleges that the supervisory defendants, defendants Nordell (CDOC Legal manager), Medina (LCF Warden), and Sokol (Program Supervisor), deprived plaintiff of access to the courts, substantive due process, and equal protection due to retaliation, discrimination, conspiracy, and deliberate indifference.

Plaintiff submitted formal complaint letters via the Postal Service directly to these defendants, apprising them of any rights violations as they occurred.  By doing so, plaintiff gave these defendants the opportunity to exercise their authority to take corrective and/or disciplinary measures where appropriate and investigate, but they but failed to do so.  Their deliberate indifference left plaintiff "very vulnerable and naked to defendant Cosners [sic] ruthless and rampant reprisals."  Plaintiff details his various mailings to these supervisory defendants.  He claims they conspired to cover up Cosner's unlawful acts by sending her copies of plaintiff's reports.

On December 9, 2009, Medina ordered plaintiff to attend a meeting regarding the BMP.  Cosner and Sokol also attended.  Prior to plaintiff entering the office, these defendants met for about 45 minutes, where "the conspiracy occurred."  The BMP was conceived prior to December 9, and Nordell's involvement was during that period.  The BMP was unwarranted because plaintiff always followed legal access procedures, was retaliation, and served to further violate plaintiff's rights, such as equal protection.

Plaintiff was not provided the required procedural due process.

These defendants also conspired with the legal assistant at Sterling Correctional Facility to further violate plaintiff's rights.  Plaintiff was not given the basic supplies he requested which would have allowed him to litigate his cases 09-cv-02605, 07-cv-01124, and 09-cv-55.  Had these defendants and Cosner never retaliated, plaintiff would not have suffered injury to his cases.  Tuttle was not a co-conspirator until after plaintiff left Sterling in March 2010.  The conspiracy continued in May 2010 when Nordell and Cosner colluded with Tuttle to violate plaintiff's rights (discussed in Claim Five).  Plaintiff contends that those three defendants were in contact with one another during the preparation for trial in state court from April 2010 to May 24, 2010, and conspired to deprive plaintiff of key papers so as to thwart plaintiff's case against Cosner.

Nordell, Medina, and Sokol, in reprisal for plaintiff's legal cases and complaints, conspired again with Cosner regarding the disciplinary charge Cosner filed the day plaintiff left LCF.

**Claim Five.**  Defendant Legal Assistant Tuttle violated plaintiff's First Amendment rights, denied him access to the courts and equal protection, conspired with other defendants, and retaliated against the plaintiff.

On May 24, 2010, plaintiff was in Seg and gave Tuttle numerous legal documents regarding Cosner so copies could be made.  Tuttle said the copies would be returned that afternoon, but he never returned.  On May 26, 2010, plaintiff filed a Step 1 Grievance on Tuttle, and the next day, a different legal assistant brought several of the documents back to plaintiff.  No copies were made.  Plaintiff noticed that three

documents were missing, and the legal assistant stated that was everything she found.

Plaintiff asked her for Tuttle's name, and that evening he filed a report with the DOC

Office of Human Resources which simply sent it to Nordell (Tuttle's supervisor).  Plaintiff

contends that Tuttle conspired with Nordell and Cosner to deprive plaintiff of his legal

property.  The missing papers were to be presented as evidence in the plaintiff's case

against Cosner, which was later dismissed.

Plaintiff seeks nominal, compensatory, and punitive damages.

## **DEFENDANTS' MOTION**

Now before the court for a report and recommendation is the Defendants'

Motion for Summary Judgment (Docket No. 96).  Plaintiff filed a response (Docket No.

118), and the defendants filed a Reply (Docket No. 120).  The court has very carefully

considered all of these motion papers as well as the court's file and applicable statutes

and case law.  The court now being fully informed makes the following findings,

conclusions, and recommendation that the motion be granted.

Defendants seek the entry of summary judgment on the following grounds: (1)

plaintiff's claims against defendants Allen, Flory, and Tuttle must be dismissed under

the Prison Litigation Reform Act ("PLRA") because the plaintiff failed to exhaust the

administrative remedies available to him; (2) all of the individual defendants are entitled

to qualified immunity because (a) plaintiff states no cognizable constitutional violation of

his Fifth, Eighth, or Fourteenth Amendment rights, (b) plaintiff has failed to demonstrate

that any of the defendants violated any of his clearly-established constitutional rights

under the Eighth Amendment, and (c) plaintiff has completely failed to demonstrate that

any of the defendants acted with deliberate indifference; (3) plaintiff fails to state a

14

viable First Amendment retaliation claim against defendants Allen, Flory, Cosner, or

Tuttle; (4) plaintiff fails to state a proper claim of violation of his constitutional right of

access to the courts; (5) plaintiff states no viable claim for conspiracy against any of the

defendants; and (6) plaintiff states no viable claim for equal protection violations against

any of the defendants.

Rule 56(a) provides that summary judgment shall be granted "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary

judgment bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of the pleadings, depositions, interrogatories, and

admissions on file together with affidavits, if any, which it believes demonstrate the

absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the

County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494

(10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the

opposing party may not rest on the allegations contained in the complaint, but must

respond with specific facts showing the existence of a genuine factual issue to be tried. .

. . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule

56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria,

149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

However, "[i]n order to survive summary judgment, the content of the evidence that the

nonmoving party points to must be *admissible*. . . . The nonmoving party does not have

to produce evidence in a form that would be admissible at trial, but '"the content or

substance of the evidence must be admissible.'" . . .  Hearsay testimony that would be

inadmissible at trial cannot be used to defeat a motion for summary judgment because

'a third party's description of a witness' supposed testimony is "not suitable grist for the

summary judgment mill."'"  Adams v. American Guarantee & Liability Ins. Co., 233 F.3d

1242, 1246 (10th Cir. 2000).

"Summary judgment is also appropriate when the court concludes that no

reasonable juror could find for the non-moving party based on the evidence presented

in the motion and response."  Southway, 149 F. Supp.2d at 1273.  "The operative

inquiry is whether, based on all documents submitted, reasonable jurors could find by a

preponderance of the evidence that the plaintiff is entitled to a verdict. . . .  Unsupported

allegations without 'any significant probative evidence tending to support the complaint'

are insufficient . . . as are conclusory assertions that factual disputes exist."  Id.;

Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).

"Evidence presented must be based on more than 'mere speculation, conjecture, or

surmise' to defeat a motion for summary judgment."  Southway, 149 F. Supp.2d at

1274.  "Summary judgment should not enter if, viewing the evidence in a light most

favorable to the non-moving party and drawing all reasonable inferences in that party's

favor, a reasonable jury could return a verdict for that party."  Id. at 1273.

Self-serving affidavits, without support in the record do not create a trial issue of

fact.  Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995).  See Stevens v.

Barnard, 512 F.2d 876, 879 (10th Cir. 1975) ("[G]eneralized, conclusory,

unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion

16

for summary judgment."); American Exp. Financial Advisors, Inc. v. Topel, 38 F.

Supp.2d 1233, 1242 (D. Colo. 1999) (noting that conclusory allegations not supported

by specific facts cannot defeat a properly supported motion for summary judgment).  "At

the summary judgment stage of litigation, a plaintiff's version of the facts must find

support in the record." Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept. 1,

2010), adopted by, 2010 WL 4449729 (D. Colo. Nov. 1, 2010).  "When opposing parties

tell two different stories, one of which is blatantly contradicted by the record, so that no

reasonable jury could believe it, a court should not adopt that version of the facts for

purposes of ruling on a motion to summary judgment." Id. (quoting Scott v. Harris, 550

U.S. 372, 380 (2007)).

Plaintiff is proceeding pro se.  The court, therefore, reviews the plaintiff's

pleading and other papers liberally and holds them to a less stringent standard than

those drafted by attorneys.  Trackwell v. United States Government, 472 F.3d 1242,

1243 (10th Cir. 2007).  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding

allegations of a pro se complaint to less stringent standards than formal pleadings

drafted by lawyers).  However, a pro se litigant's conclusory allegations without

supporting factual averments are insufficient to state a claim upon which relief can be

based.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume

that a plaintiff can prove facts that have not been alleged or that a defendant has

violated laws in ways that a plaintiff has not alleged.  Associated Gen. Contractors of

Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  See

Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply

additional factual allegations to round out a plaintiff's complaint or construct a legal

theory on plaintiff's behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues).  "The plaintiff's *pro se* status does not entitle him to application of different rules."  Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept. 1, 2010).

The court notes that in their Reply (Docket No. 120 at 2-3), the defendants correctly note that the plaintiff failed to address the Statement of Undisputed Facts detailed in Defendants' Motion for Summary Judgment.  Instead, plaintiff used a conclusory statement to address defendants' well-supported facts by stating, "I've perused Defendants 'Statement of Undisputed' as such I declare I am not in agreement."  (Docket No. 118 at 1).  Plaintiff failed to present specific facts he disagrees with and what support he has to contradict those facts.  Defendants' statement of facts are based extensively on plaintiff's own testimony.  The court agrees that these facts show that plaintiff failed to exhaust his administrative remedies with respect to certain claims, and plaintiff has not provided the necessary evidence to establish claims for retaliation, conspiracy, equal protection and due process violations, or denial access to the courts.  In sum, this court finds that the plaintiff's claims are insufficient to survive summary judgment as a matter of law.

**Exhaustion**

Defendants assert that the plaintiff's claims against defendants Allen, Flory, and Tuttle must be dismissed under the PLRA because the plaintiff failed to exhaust the administrative remedies available to him.  The PLRA, see 42 U.S.C. § 1997e(a), requires a prisoner to exhaust "such administrative remedies as are available" before

suing over prison conditions.  This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."  Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003).  Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."  Id. at 524 (citing Booth v. Churner, 532 U.S. 731, 741 (2001)).  The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into [the PLRA's] statutory exhaustion requirement."  Booth, 532 U.S. at 741, n.6.  "In Booth, the Supreme Court explained that one of the purposes of the exhaustion requirement is to force an inmate to go through the administrative process which in turn might afford prison officials the opportunity to take some corrective action that would preclude litigation."  Beaudry, 331 F.3d at 1167.

The Colorado Department of Corrections ("CDOC") has a multi-step administrative grievance process available to inmates set forth in its regulations which entails a three-step written grievance procedure.  See CDOC Administrative Regulation 850-04 (Docket No. 96-4).  The Tenth Circuit has found that an inmate must appeal his grievance through all available channels to exhaust his administrative records fully.  Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies.").

The "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their

complaints." Jones v. Bock, 549 U.S. 199, 216 (2007).  As an affirmative defense, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."  Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007).  "When raising an affirmative defense in a motion for summary judgment, '[t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted.' . . .  'If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact.' . . .  'If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is entitled to summary judgment as a matter of law.'"  Sparks v. Foster, 241 Fed. Appx. 467, 472, 2007 WL 1748509, at *4 (10th Cir. 2007) (quoting Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997)).  This court finds that the defendants have met their initial burden and that plaintiff has not demonstrated a genuine issue of material fact.

As defendants note, during his deposition, plaintiff explained that his claims against Allen arise from two specific incidents, her "handling" of plaintiff's "skirmish" with Officer Jones (the "unrelated issue" referred to in the Complaint) and her alleged broken promise of being allowed to move as a porter.  (See Docket No. 96-1, Defs.' Ex. A at 34:1 - 37:16; 40:1-25 42:3-22).  Further, plaintiff admitted at his deposition that after filing the Step 1 Grievance on Allen for her alleged mishandling of the skirmish, plaintiff did not appeal the response (Docket No. 96-1 at 22) and thus did not file the requisite Step 2 and 3 Grievances, and he never grieved Allen for not giving him a porter job (Docket No. 96-1 at 96-1 at 22).

With regard to his claims against Flory, during his deposition plaintiff stated that

20

his real complaint is solely based upon Flory providing testimony that resulted in the

plaintiff's disciplinary violation for assault.  (Docket No. 96-1 - 96-2, Defs.' Ex. A at

54:15-61:23).  After what defendants describe as a "burdensome search," they were

able to identify the relevant grievances against Flory, but plaintiff filed only Step 1 and 2

Grievances against Flory in which he claimed that "in patent retaliation of my threat to

sue Sgt. Flory filed an exaggerated assault charge against me."  (Docket No. 96-4 at 13,

Defs.' Ex. L).  Plaintiff did not file a Step 3 Grievance regarding this incident.

Regarding Tuttle, plaintiff stated during his deposition that his claims are that

Tuttle conspired with Cosner, Medina, and Nordell to prevent him from succeeding in

the small claims action pending in Hugo, Colorado, against Cosner by failing to return

his photocopies and retaliated against him by denying him legal access.  (Docket No.

96-2, Defs.' Ex. A, 125:21 - 126:3-8).  Defendants cannot locate a single grievance

against Tuttle filed by the plaintiff.

In his Response, plaintiff does not refute defendants' argument concerning the

lack of exhaustion with respect to the specific claims lodged against Defendants Allen,

Flory and Tuttle. Rather, plaintiff points to four grievances, none of which establish that

he exhausted his administrative remedies by filing a Step 3 Grievance against

defendants Allen, Flory or Tuttle.  (See Docket Nos. 118 at 27-30).

Based upon the findings above, the plaintiff's claims against defendants

Allen, Flory, and Tuttle should be dismissed under PLRA based upon the plaintiff's

failure to exhaust those claims fully.  Even if that were not the case, as found in the

discussions below, plaintiff has not established his claims of retaliation, conspiracy,

denial of equal protection and due process, and denial of access to the courts.

21

## Supervisory Liability and Conspiracy Claims

Plaintiff's claims against supervisory defendants Nordell, Medina, and Sokol should also be dismissed.  In the Tenth Circuit, "supervisory relationship alone is insufficient for liability under § 1983."  Poolaw v. Marcantel, 565 F.3d 721, 732 (10th Cir. 2009).  Before the Supreme Court's ruling in Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009), the Tenth Circuit required an "affirmative link" between the alleged constitutional violation and the alleged actions taken by the defendant supervisor(s). See Serna v. Colorado Dep't of Corrections, 455 F.3d 1146, 1152-53 (10th Cir. 2006). In Iqbal, the Supreme Court reiterated that '[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  Iqbal, 556 U.S. at 676; 129 S. Ct. at 1948.  In addition, the Court explained that a government official "is only liable for his or her own misconduct."  Id. at 1949. The Tenth Circuit has not yet determined the full extent of Iqbal's impact on its case law. See, e.g., Martinez v. Milyard, 440 Fed. App'x 637, 638 n.1, 2011 WL 4537786 (10th Cir. Oct. 3, 2011) (unpublished opinion).  Nevertheless, plaintiff's claims here against the three supervisory defendants fail even under the Tenth Circuit's pre-existing standard.

More specifically, plaintiff's claims that  the supervisory defendants had the requisite personal participation because he sent them numerous "declarations" and other documents concerning his allegations regarding Cosner's actions yet failed to act is insufficient under Tenth Circuit law.  See Allen v. Reynolds, 2012 WL 1139017 (10th Cir. Apr. 6, 2012) (unpublished opinion) (similar assertions by the same plaintiff in this case, Shawn Allen, found to be insufficient).  Plaintiff has made only conclusory claims and has a submitted no evidence that these defendants participated in the alleged

violations, did not investigate the situations complained of, or acted with deliberate indifference.

Furthermore, plaintiff's allegations regarding conspiracies among the various defendants, including the supervisory defendants, are inadequate.   "Allegations of conspiracy may . . . form the basis of a § 1983 claim. . . . However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. . . .  'Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.'"  Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998) (quoting Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994)).  See Jorgensen v. Montgomery, 2008 WL 216398, at *2 (D. Colo. Jan. 24, 2008) (citations omitted) ("[A] plaintiff must allege specific facts which show both an agreement to deprive the plaintiff of his legal rights, as well as concerted action among the defendants. . . .   However, there is no requirement of an express agreement, nor must the conspirators know all of the details of the conspiracy.").  "To establish a *prima facie* claim of conspiracy under 42 U.S.C. § 1983, the Plaintiff must make a factual showing for each of the following elements: (1) a shared conspiratorial objective (the agreement to deprive the Plaintiff of a constitutional or statutory right); (2) concerted action by the Defendants; and (3) an actual deprivation of rights."  Id. at *5 (citation omitted).  Here, plaintiff has provided no facts to support even an inference that some plan or joint action existed between or among any the defendants, including the supervisory defendants.  Therefore, plaintiff's conspiracy claims fail as a matter of law.

In sum, defendants' motion for summary judgment should granted with respect to plaintiff's claims against defendants Nordell, Medina, and Sokol as well as all of his

conspiracy claims against all of the defendants.

**Claims Against Defendant Cosner**

Based upon the findings above, regarding the claims against defendants Allen, Flory, Nordell, Medina, Sokol, and Tuttle, the only claims remaining which need to be discussed are those against defendants Cosner.  However, the discussion below also applies to the claims against the other defendants.

First Amendment Claim - Denial of Access to the Courts.  With respect to plaintiff's First Amendment denial of access to the courts claim, plaintiff must show that the defendants' actions resulted in "actual injury" by frustrating, impeding, or hindering his efforts to pursue a non-frivolous legal claim concerning his conviction or conditions of confinement.  See Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010); Wardell v. Duncan, 470 F.3d 954, 959 (10th Cir. 2006); Rainey v. Morris, 2012 WL 769518, at *1 (D. Colo. Mar. 8, 2012).  "Conclusory allegations of injury in this respect will not suffice." Wardell, 470 F.3d at 959 (citing Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999)).

Here, defendants have shown that in terms of the law library access, plaintiff admits he was provided with materials while in segregation and is merely upset because he did not receive assistance at the exact moment of the request.  (See, e.g., Docket No. 96-2, Defs.' Ex. A, 65:6-66:25).  His legal access request forms show he received the requested materials in a reasonable time or was asked to cure a deficiency in his request.  (See Docket Nos. 96-3 at 13-14, 96-4 at 1-3; Defs.' Ex. H, I, and J).  Under the facts alleged by the plaintiff here, any failure to provide him with the immediate, personal legal assistance he requested from the legal assistant who is the sole legal assistant for the entire prison (see Docket No. 96-2 at 7, Defs.' Ex. A, 66:10-19)   does

not state a claim that rises to the level of a constitutional violation.  Plaintiff was and is

given adequate time to file necessary motions, responses, etc., with the court.  His

failure to plan his time appropriately and instead wait until the last minute to request

legal assistance by CDOC employees does result in a constitutional violation by such

employees.  Furthermore, the court takes judicial notice of the sheer volume of the

plaintiff's filings in his many cases before this court and the large number of grievances

and other complaints he alleges to have filed against numerous CDOC employees and

finds that plaintiff has not been deprived of adequate supplies to fulfill any of his

responsibilities with the court.  Plaintiff's inefficient management of his time and

resources does not result in defendants being liable under § 1983.

In addition, the court finds that plaintiff has not established any relevant actual

injury to his numerous legal actions and thus cannot state a claim against Cosner, or

any of the defendants, for violation of his constitutional right to access the courts.  In his

Prisoner Complaint, plaintiff specifically mentions three cases in this District which he

claims were prejudiced by defendants' actions (09-cv-00741-CMA-MJW, 09-cv-01349-

ZLW, 09-cv-02605-WJM-MJW).  First, plaintiff claims that was "prejudiced completely"

by Cosner's actions in the first two cases cited.  (See Docket No. 69-2, Defs.' Ex. A,

69:18-70:25).  As defendants correctly note, however, on June 8, 2009, in Case No. 09-

cv-00741-CMA-MJW plaintiff filed a Motion for 30 Day Extension to Respond to

Defendants' Motion to Dismiss, evidencing plaintiff's clear understanding of the ability to

file for extensions. (Case No. 09-cv-00741-CMA-MJW, Docket No. 32; here, Docket No.

96-4 at 17-18, Defs.' Ex. N).  Moreover, on June 9, 2009, I granted Plaintiff's Motion for

Extension, allowing him until July 13, 2009, to respond to Defendants' Motion to

Dismiss.  (Case No. 09-cv-00741-CMA-MJW, Docket No. 34; here, Docket No. 96-4 at 19, Defs.' Ex.O).  Plaintiff was placed in Seg on July 13, 2009.  Therefore, any time between June 8, 2009, and the time he was placed in Seg on July 13, 2009, plaintiff could have timely responded to the pending Motion to Dismiss.

Furthermore, on July 20, 2009, Plaintiff filed a Motion to Drop Case in which he stated "[i]t would appear next to impossible to succeed in the above case as a pro se litigant. A special civil attorney accomplished in mental health rights is required. Even then success would undoubtedly be most arduous at attaining."  (Case No. 09-cv-00741-CMA-MJW, Docket No. 36; here, Docket No. 96-3 at 11, Defs.' Ex. F).  On July 27, 2009, Judge Arguello dismissed case number 09-CV-00741-CMA-MJW without prejudice.  (Case No. 09-cv-00741, Docket No. 39; here, Docket No. 96-3 at 12, Defs.' Ex. G).[3]

---

[3]The court notes that in the interim between the filing of his Motion to Drop Case (Docket No. 36) and Judge Arguello's Order dismissing the action (Docket No. 39), plaintiff filed a letter (Docket No. 38) in which he stated he wanted to apprise the court why he elected to drop the law suit.  He claimed that he was unable obtain library aid (citations, paper, Federal Rules) and had a five-page response to the defendants' motion to dismiss but was unable to get the prison's legal assistant ("Jane Doe") to make the necessary copies.  Nevertheless, he acknowledged that he has been "impelled" to hand copy motions and "what have you," but he claimed he was unable to do so because the library was not providing him with his needed "legal captions, forms, and papers as requested" and had been unable for a week to obtain any legal work from his box.  The court notes, however, that this letter was dated July 22, 2009, more than a week after plaintiff's response to that case was due.  Therefore, even if he had been unable to access his legal box for the week prior, such access would have been after his response was due.  Furthermore, just prior to the response deadline, plaintiff had the resources to file his motion to drop the case, and thus could have just as easily timely submitted his purported five-page response. Moreover, plaintiff has made no showing that the actions of  any of the defendants here, including defendant Cosner, caused him to have his case dismissed.  Finally, that action was dismissed without prejudice.

26

This court agrees with the defendants that the docket and the timeline demonstrate that the defendants' actions did not play any role in the plaintiff's case being dismissed.  Plaintiff's deadline for filing a response was the same day he was put in Seg at LCF, and he has provided no evidence that he could not file any response because of his placement in  Seg and resultant alleged limited access to legal assistance.

Plaintiff also argues that but for defendants' action denying him access to the courts, his case number 09-cv-01349-ZLW would have not been dismissed. Defendants have shown, however, that plaintiff had access to the court during his time in Seg at LCF because on July 20, 2009, he filed another Motion to Drop Case Before it Gets Started in which he stated, "I, Shawn D. Allen, after ascertaining key facts hereby elect to not proceed with the above case against 'Gray.' I have been transferred out of CCA and back to D.O.C. Too the extreme difficulty of pro se litigation in such a convoluted case has deterred me.  Please grant the motion prior to defendant being served)." (Case No. 09-cv-01349-ZLW, Docket No. 5; here, Docket No. 96-3 at 6-7, Defs.' Ex. D).

On July 23, 2009, Judge Weinshienk entered an Order of Dismissal in that case which outlined the various problems with Plaintiff's case. (Case No. 09-cv-01349-ZLW, Docket No. 6; here, Docket No. 96-3 at 8-9, Defs.' Ex. E).  The Order stated:

> [I]n an order filed on June 10, 2009, Magistrate Judge Boyd N. Boland directed the clerk of the Court to commence a civil action and directed Mr. Allen to cure a deficiency if he wished to pursue his claims. More specifically, Magistrate Judge Boland ordered Mr. Allen to file an amended pleading because the Prisoner Complaint was missing various pages. Mr. Allen was warned that the action would be dismissed without further notice if he failed to cure the deficiency within thirty days.

27

> Mr. Allen has failed to cure the deficiency within the time allowed and he
> has failed to respond in any way to Magistrate Judge Boland's June 10
> order.  Therefore, the Prisoner Complaint and action will be dismissed
> without prejudice for failure to cure the deficiency.

(Case No. 09-cv-01349-ZLW, Docket No. 6; here, Docket No. 96-3, Defs.' Ex. E).

As pointed out by the defendants, based on Judge Boland's Order, plaintiff had

until July 10, three days before he was placed in Seg at LCF, to cure the deficiencies.

Plaintiff has made no showing that his failure to cure the deficiencies in case 09-CV-

01349-ZLW had anything to do with any of the defendants in this case, and thus plaintiff

cannot show the requisite injury to hold any defendant liable for denial of access to the

courts.

With regard to Civil Case No. 09-cv-02605-WJM-MJW, plaintiff has likewise

made no showing that defendants impeded his access to the courts.  Furthermore, the

court takes judicial notice of the docket in that case which shows that plaintiff had ample

opportunity to prosecute that action and his access to the court was not impeded by

defendants.  For example, in that case, plaintiff was granted leave to amend his

pleading (Docket No. 64 in that case), filed a response and affidavit in response to

defendants' motion for summary judgment (Docket Nos. 54 and 55), was given an

extension of time for file objections to this court's report and recommendation (Docket

No. 103), filed such objections (Docket No. 108), filed a motion for reconsideration of

the Clerk's Judgment (Docket No. 115), and filed a Notice of Appeal (Docket No. 117).

Plaintiff's appeal of Judge Martinez's entry of judgment for the defendants on the merits

was just this month dismissed as frivolous by the Tenth Circuit Court of Appeals.

(Docket No. 127).  Consequently, plaintiff has also not shown any actual injury occurred

28

in that case.

In his Prisoner Complaint, plaintiff makes mention of a 106 action in state court regarding "bogus write ups." However, he testified that the case was dismissed for failure to exhaust. (See Docket No. 96-1 at 3). Moreover, plaintiff has made no factual showing that any defendant actually caused actual injury to any 106 action. His claims of injury are conclusory.

Based upon the findings above, this court concludes that the plaintiff has not make a factual showing that any actual injury occurred in any of the actions referenced by the plaintiff in his Prisoner Complaint. Therefore, his claims against defendant Cosner (and all of the defendants) for denial of access to the courts on this ground must be dismissed.

Plaintiff also complains about the creation of a behavioral management plan ("BMP"). Defendants, however, have shown that such BMP simply instructed him to follow the CDOC administrative regulations pertaining to law library access. (See Docket No. 96-4 at 15-16, Defs.' Ex. M). A review of the BMP shows that nothing in it required plaintiff to act in a different manner than other inmates. Plaintiff was being instructed as to the proper way to request law library access. Plaintiff has made no showing that the creation and implementation of the BMP rises to the level of a constitutional violation.

With regard to plaintiff's allegations regarding the purported theft of his legal notebook, his own averments show that he does not know who actually took his notebook. He merely surmises Cosner took it. "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary

judgment." <u>Southway</u>, 149 F. Supp.2d at 1274.

Based upon the findings above, summary judgment should be granted to

defendant Cosner (and actually all of the defendants) on the plaintiff's First Amendment

claim of denial of access to the courts.

<u>Retaliation.</u>   "It is well-settled that [p]rison officials may not retaliate against or

harass an inmate because of the inmate's exercise of his right of access to the courts."

<u>Gee</u>, 627 F.3d at 1189 (internal quotation marks omitted) (citing <u>Smith v. Machner</u>, 899

F.2d 940, 947 (10th Cir. 1990)).   Plaintiff may make a showing of retaliation by

demonstrating the following: 1) he engaged in constitutionally protected activity; 2)

defendants' actions caused plaintiff "to suffer an injury that would chill a person of

ordinary firmness from continuing to engage in that activity;" and 3) defendants'

"adverse action was substantially motivated as a response to the plaintiff's exercise of

constitutionally protected conduct." <u>Shero v. City of Grove, Okla.</u>, 510 F.3d 1196, 1203

(10th Cir. 2007) (citing <u>Worrell v. Henry</u>, 219 F.3d 1197, 1212 (10th Cir. 2000)).   The third

element requires that the plaintiff show that defendants' retaliatory motive was a "but

for" cause of the defendants' actions.   <u>Smith v. Maschner</u>, 899 F.2d 940, 949-50 (10th

Cir. 1990).   "An inmate claiming retaliation must allege *specific facts* showing retaliation

because of the exercise of [his] constitutional rights." <u>Peterson v. Shanks</u>, 149 F.3d

1140, 1144 (10th Cir. 1998) (quotation omitted) (emphasis in original).

Factual allegations consisting only of engagement in protected activity, for

example filing prison grievances, "[do] not establish the requisite causal connection for

[a] retaliation claim.  If it did, litigious prisoners could claim retaliation over every

perceived slight and resist summery judgment simply by pointing to their litigiousness."

Strope v. Cummings, 381 Fed. App'x 878, 883 (10th Cir. 2010) (unpublished).  Here, like

the plaintiff in Strope, plaintiff's "attribution of retaliatory motive is conjectural and

conclusory."  Id. at 883.  By his own averments, plaintiff essentially admits that he warns

or advises virtually all CDOC staff and officials that he will sue and/or grieve them.

Plaintiff cannot innoculate himself from any actions by staff by giving such routine

warnings.  See Peterson, 149 F.3d at 1144 ("Obviously, an inmate is not inoculated

from the normal conditions of confinement experiences by convicted felons serving time

in prison merely because he has engaged in protedt activity.").  Furthermore, temporal

proximity between protected activity and a challenged prison action does not, in itself,

demonstrate the causal nexus for a retaliation claim.  See Friedman v. Kennard, 248

Fed. App'x 918, 922 (10th Cir. 2007) (citing cases) ("Standing alone and without

supporting factual allegations, temporal proximity between an alleged exercise of one's

right of access to the courts and some form of jailhouse discipline does not constitute

sufficient circumstantial proof of retaliatory motive to state a claim.").

        This court concludes that the plaintiff has not alleged specific facts showing

retaliation by defendant Cosner (as well as all of the defendants) and does not meet the

strict "but-for" standard for causation.  Therefore, defendants' motion for summary

judgment should be granted with respect to the plaintiff's claims of retaliation.

        Equal Protection and Due Process Claims.  Finally, this court finds that the

plaintiff has provided no support for his conclusory allegations that the defendants

violated his equal protection and due process rights.  Plaintiff has made no showing that

defendant Cosner or any other defendant treated him differently than any other

similarly-situated inmate or that there was not a rational basis for the difference in

31

treatment, nor has he made any factual showing of any due process violations.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion for Summary Judgment (Docket No. 96) be **granted**.  If the court accepts and adopts this recommendation, then it is further

**RECOMMENDED** that the court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from such order would not be taken in good faith and therefore *in forma pauperis* status be denied for the purpose of appeal.  See Coppedge v. United States, 369 U.S. 438 (1962).  If such a certification is made, and the plaintiff files a notice of appeal, he would then be required to pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley**

**v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  April 17, 2012                          s/ Michael J. Watanabe
       Denver, Colorado                    Michael J. Watanabe
                                      United States Magistrate Judge